**AMCOLE ENERGY CORPORATION, a Utah corporation, Plaintiff–Appellant,**

v.

**MANN INDUSTRIES, INC., an Oklahoma corporation, and James I. Mann, an individual, Defendants–Appellees.**

No. 61206.

Supreme Court of Oklahoma.

Feb. 28, 1989.

James P. McCann, Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, for plaintiff-appellant.

Erwin D. Phillips and David W. Phillips, Sand Springs, for defendants-appellees.

HARGRAVE, Chief Justice.

This action is an appeal from the District Court of Tulsa County, in Case No. C–83–274, a suit by Plaintiff Amcole Energy Corporation (hereinafter called Amcole) for an accounting, and a counterclaim by the Defendants James I. Mann and Mann Industries, Inc. (hereinafter collectively called Mann) for costs of constructing a natural gas gathering system. Mann was hired by Amcole to supervise, manage and increase Amcole's natural gas compression systems in, primarily, Lincoln and LeFlore counties in Oklahoma. The letter of employment, dated May 15, 1978, provided:

1. That Mann would be paid a retainer of $1,200.00 per month (later increased to $1,600.00 per month) for "consulting and other engineering services".

2. That Mann would get an overriding royalty of 2% of any new mineral lease that Mann presented to Amcole which Amcole subsequently acquired.

3. That Amcole would have a right of first refusal with respect to all oil, gas

and other energy-related prospects which Mann might encounter.

In early 1982, Mann and Amcole began discussing the establishment of a new gas compression system, to be known as the South Davenport Gas System. Various discussions were had by telephone and in person, and at least $50,000.00 was advanced by Amcole to Mann for the South Davenport project. At the time the discussions began, Mann had acquired, or was in the process of acquiring, two gas contracts for the system, and Amcole purchased interests in six other wells, on Mann's recommendation, to be connected to the South Davenport system. In addition, Mann was to receive a 5% net profits interest in the system and Mann's employees were to have the option to purchase an additional 5% interest, based upon the actual costs of the system. Mann was continuously proceeding with development of the system, with the knowledge of Amcole. The necessary rights of way and surface leases were acquired in the name of Mann Industries, Inc., as had been done in the past, and copies were forwarded to Amcole.

Also in early 1982, Mann proposed to Amcole a different method for computing his billing for services rendered to Amcole. Testimony at trial established that, in addition to the $1,600.00 per month received by Mann, whenever Mann provided services for construction of a system or incurred expenses in connection with such system, he was compensated for such expenses and for work provided by his employees. The new method of compensation proposed by Mann was a "percentage of overhead" method, whereby Mann would bill out that portion of his total overhead represented by actual time spent on Amcole projects. Amcole's president requested that Mann set out this new proposal in writing, as it was an entirely new method of compensation. Mann never sent any written proposal to Amcole and Amcole never agreed to the new method of compensation.

In July, 1982, Mann sent an invoice to Amcole for work done on the gas systems (other than South Davenport) for January through June, 1982, based upon the new "percentage of overhead" method. Amcole refused to pay this invoice because they had never authorized this method of compensation. Shortly before trial, and prior to filing of its Answer, Mann recomputed his charges for the months of January through November 9, 1982, based upon the actual time spent by his employees on the various Amcole projects, including South Davenport. The amounts shown for the systems other than South Davenport were $68,803.66, and $18,303.50 for South Davenport. Under the "percentage of overhead" method of calculation, Mann had billed $58,352.02 for the systems other than South Davenport for January through June, 1982, and $11,335.63 for South Davenport.

Mann prepared an Account Balance, dated June 27, 1983, and introduced at trial as Amcole's Exhibit 4, which computed all monies owed to and from Amcole on all the gas systems, subtracted the "percentage of overhead" fees charged, and added in the itemized labor charges prepared prior to trial. Mann testified that these itemized labor charges were computed by reconstructing the time spent from review of old invoices and estimating the time spent on each project.

On July 1, 1982, Mr. Roy T. Rimmer, Jr. became president of Amcole. At about this same time, a rift developed between Amcole and Mann over the new "percentage of overhead" fee calculations submitted by Mann, and Amcole's failure to send more money for completion of the South Davenport project. Beginning July 2, 1982, Mann wrote a series of letters to Amcole, demanding payment for and asserting ownership of the South Davenport Gas System due to Amcole's failure to pay for the costs of construction. As late as October, 1982, Mann wrote to Amcole demanding that Amcole send the money within ten days or forfeit all rights to the system.

By letter of November 5, 1982, signed by Roy T. Rimmer, Jr. Amcole terminated Mann's employment, and asserted Amcole's ownership of 100% of the South Davenport Gas System, because Amcole had financed the purchase of the entire system. This

letter further states that the agreement was for Mann, individually, to have the option to purchase a 5% interest, and for Mann's employees to have the option to purchase an additional 5% interest in the system.

Amcole filed the present action in January, 1983, alleging four causes of action. In its first cause of action, Amcole alleged that it was the owner of the South Davenport and other gas systems, and asked for an accounting from Mann on all the systems. The second cause of action asked for return of $59,737.53 in checks allegedly wrongfully deposited to Mann's account by Mann. The third cause of action stated that on or about January 28, 1982, Mann agreed to construct on behalf of Amcole, the natural gas gathering system known as the South Davenport System, which contemplated that Amcole would provide the necessary financing for construction, and that Mann would enter into the necessary contracts in order to fully construct the system. Amcole prayed for specific performance of this contract, alleging that Amcole had provided all the necessary funding and had generally done everything necessary to perform the contract. The fourth cause of action alleged conversion of funds by Mann on the South Davenport system and asked that all contracts in the name of Mann Industries, Inc. be transferred to Amcole. This verified petition was signed by Roy T. Rimmer, Jr., Amcole's president.

Amcole filed a Request for Production of Documents on January 27, 1983. Mann prepared its Account Summary on June 27, 1983. On July 1, 1983, Amcole dismissed its Third and Fourth Causes of Action. Mann's Answer, containing its counterclaim for the costs of construction of the South Davenport system, was filed July 19, 1983, alleging that Mann was the owner of the South Davenport system, subject to an agreement between Mann and Amcole for Amcole to purchase said system and provide financing of same. The Counterclaim alleged that Mann was caused to expend its own funds for construction of the system and asked for $136,395.60 as the amount

due under the contract of employment and for purchase of the gas system.

The parties waived a jury and tried the case before the trial judge. At conclusion of the trial, and after a separate hearing on attorneys' fees, the trial judge awarded Amcole the sum of $59,737.53 on its Second Cause of Action, found Amcole Energy Corporation to be the owner of the South Davenport system and found that James I. Mann, individually, was to receive 10% of the net profits of the South Davenport system and that Mann's employees were to have the option to purchase 5% of the system upon payment of 5% of the actual cost of the South Davenport system. The trial court awarded Mann Industries, Inc. the sum of $130,896.56 as the cost of construction of the South Davenport system, plus attorneys' fees of $12,225.00 and costs.

On appeal, Amcole urges four grounds for reversal:

1. That a contract for construction of a natural gas compression system is a contract affecting real property, thus required by the Statute of Frauds to be in writing.

2. That no evidence was introduced at trial to take the case out of the Statute of Frauds by proving a writing sufficient to satisfy the Statute of Frauds.

3. That no evidence was introduced at trial regarding any agreement between the parties to pay for itemized labor charges, which are included in the total judgment awarded to Mann.

4. That the award of an attorneys' fee in the amount of $150.00 per hour was not supported by the evidence introduced at the hearing to award attorneys' fees.

■ We are not persuaded by Appellant's Statute of Frauds argument. Oklahoma's Statute of Frauds, 15 O.S.1981 § 136, states: "The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent: . . . 5. An agreement . . . for the sale of real property, or of an interest therein; . . ." Appellant argues that "the most integral aspect of the natural gas gathering and collection system involves

the acquisition of various interests in land," thus requiring such contract, under the Statute of Frauds above-quoted, to be in writing in order to be valid and enforceable. The agreement between Amcole and Mann was for the construction and financing of a natural gas gathering and compression system. The contracts which affected interests in real estate, such as the rights of way and surface leases were in writing. The agreement to construct and finance such system does not involve the sale of an interest in real property.

■ As to Appellant's third ground for reversal, Appellant's own witnesses testified that during the course of his employment, Mann would charge, in addition to his $1,600.00 consulting and engineering services fee, for work done by his employees, as well as for his direct expenses, on the various Amcole projects. The trial judge used Mann's Account Summary figures, which included the itemized labor charges, included in Amcole's Exhibit 4. Mr. Mann testified that the charges were based upon an hourly rate charged for the time spent by each employee on each particular Amcole project, which was reconstructed by Mann, prior to trial, by reviewing invoices from each system and estimating the time spent by his employees thereon.

The standard of review is whether there is any competent evidence in the record which reasonably supports the trial court's judgment. *Whitson v. Wetherbee Electric Co.*, 416 P.2d 888 (Okl.1966). We find that the evidence introduced at trial by Appellant's own witnesses was sufficient to support the trial court's judgment.

■ As to Appellant's fourth proposition of error, we find that there was no abuse of discretion by the trial court in awarding attorneys' fees in the amount of $150.00 per hour. Appellant's witness at the hearing to determine attorneys' fees testified that a partner in his own firm, having 25 years' experience, charges $125.00 per hour. The evidence reveals that each of Defendant's attorneys has twenty years' or more experience. The trial court failed to set forth with specificity the facts upon which the award of attorneys' fees was based, but the amount of the award is the same as that shown in Defendant's attorneys' time records, introduced as Exhibit A to defendant's attorneys' affidavits, with their computations at $150.00 per hour.

AFFIRMED.

All Justices concur.